UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

    Plaintiff,

        v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

    Defendant.

Civil Action No. 08-1046 (JDB)

## MEMORANDUM OPINION

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action against the United States Department of Homeland Security ("DHS"), and its component, United States Customs and Border Protection ("CBP"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., seeking certain records pertaining to the placement of the U.S.-Mexico border fence. CREW's FOIA request has two parts, the first of which concerns records relating to an allegation that the border fence will bypass property owned by Ray L. Hunt as a result of undue influence. Now before the Court are the parties' cross-motions for partial summary judgment with respect to the first part of CREW's FOIA request.[1] At issue are twenty-one documents withheld by the government, in whole or part, pursuant to FOIA Exemption 5.

## BACKGROUND

In 2006, Congress passed the Secure Fence Act, Pub. L. No. 109-367, 120 Stat. 2638 (Oct. 26, 2006), authorizing construction of 700 miles of fencing along the U.S.-Mexico border,

---

[1] The second part of CREW's FOIA request is not at issue here.

including portions of the border located in Texas. Compl. ¶ 5. Decisions concerning the proposed location of the border fence in Texas have been controversial and there have been allegations that wealthy and well-connected landowners have influenced the siting process. Pl.'s Statement of Material Facts Not in Dispute ¶ 1. In February 2008, The Texas Observer published an article suggesting that undue influence may have played a role in the decision that border fence construction would bypass land owned by Ray L. Hunt, a "Dallas billionaire" and "close friend of President George W. Bush." Id.; Pl.'s Ex. A (Melissa del Bosque, Holes in the Wall; Homeland Security Won't Say Why the Border Wall Is Bypassing the Wealthy and Politically Connected, The Texas Observer, Feb. 18, 2008).

Soon after this article appeared, CREW sent a letter to CBP's FOIA Director, requesting, pursuant to the FOIA:

> [A]ny and all records dating from January 20, 2001 to the present reflecting communications concerning Ray L. Hunt, Hunt Consolidated, Inc., or any properties known to be owned by Ray L. Hunt and/or Hunt Consolidated, Inc. and the construction of fencing along the border between the U.S. and Mexico.

Hanson Decl. ¶ 4; Answer, Ex. A (CREW's FOIA request to CBP, Mar. 17, 2008). Following the initiation of this action on June 18, 2008, the parties agreed to narrow CREW's original request and also to bifurcate the processing of the request. Hanson Decl. ¶ 4; Answer ¶ 7. With respect to the first part of CREW's request, the new terms agreed to by the parties are as follows:

> Any and all records, regardless of format, dating from January 20, 2001 to the present reflecting communications concerning Ray L. Hunt, Hunt Consolidated, Inc., or any properties known to be owned by Ray L. Hunt and/or Hunt Consolidated, Inc. and the construction of fencing along the border between the U.S. and Mexico, including but not limited to, input sought or received from Mr. Hunt and/or Hunt Consolidated on border fence construction.

Id.

Following a search of its records, CBP released a total of thirty-two responsive documents. The majority of these documents were redacted, in whole or part, pursuant to FOIA Exemptions 5, 6 and 7(E). CBP has moved for summary judgment with respect to these claimed exemptions and in support it has submitted a <u>Vaughn</u> Index, the declaration of Mark Hanson, Director of the FOIA Division at CBP's Office of International Trade, and redacted copies of all responsive documents. For its part, CREW challenges only the redactions made pursuant to Exemption 5, a protection invoked by CBP with respect to twenty-one documents. As to these disputed documents, CREW contends that CBP's submissions are inadequate to satisfy its burden and, accordingly, summary judgment should be granted in CREW's favor. On July 29, 2009, after full briefing on the cross-motions for partial summary judgment, the Court ordered CBP to produce unredacted copies of the disputed documents for <u>in camera</u> inspection. Now that the Court has completed its inspection of those documents, the parties' cross-motions are ripe for resolution.

## **STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as

otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Any factual assertions in the movant's affidavits will be accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA requires a federal agency to release all records responsive to a proper request except those protected from disclosure by one or more of nine enumerated exemptions set forth at 5 U.S.C. § 552(b). The district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); see Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139 (1980). The agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980) (internal citation and quotation omitted); see also Maydak v. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000) (the government has the burden of proving each claimed FOIA exemption). The district court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v.

Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

## ANALYSIS

According to CBP, the twenty-one documents at issue here were created as part of the agency's effort to counter allegations in The Texas Observer article that Ray L. Hunt received preferential treatment relating to the placement of the border fence.  See Def.'s Reply and Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Def.'s Reply") at 4-5.  CBP contends, then, that certain information contained in those documents is properly withheld pursuant to FOIA Exemption 5 "to protect the internal deliberations within CBP."[2]  Id. at 5.  Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  See 5 U.S.C. § 552(b)(5).  "'Courts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege.'"  Rockwell Int'l Corp. v. Dep't of Justice, 235 F.3d 598, 601 (D.C. Cir. 2001) (quoting Formaldehyde Inst. v. Dep't of Health and Human Servs., 889 F.2d 1118, 1121 (D.C. Cir. 1989)).  In the FOIA context, the deliberative process privilege applies to inter- or intra-agency documents that are both pre-decisional and deliberative.  See Baker & Hostettler LLP v. Dep't of Commerce, 473 F.3d 312, 321 (D.C. Cir. 2006).

In support of its position, CBP has submitted the declaration of Mark Hanson, Director of the FOIA Division at CBP's Office of International Trade.  The Hanson declaration first recites

---

[2] CBP also seeks to justify one of its redactions on the basis of the attorney-client privilege, see Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. in Part ("Def.'s Mem.") at 16-17, which is discussed below.

the well-established proposition that the deliberative process privilege prevents injury to the quality of agency decisions by: (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. Hanson Decl. ¶ 12; see Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 151-53 (1975); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). Beyond this general policy justification, the Hanson declaration contains only three paragraphs that address the applicability of Exemption 5 to the disputed documents. Initially, he asserts that Exemption 5 "has been applied in order to protect chains of e-mail messages that detail the internal deliberations of CBP personnel that would reveal both the deliberative-thought process of CBP individuals and the overall decision-making process of CBP as an agency." Hanson Decl. ¶ 13. Next, he claims that the redactions protect "internal agency deliberations" relating to "the normal back-and-forth that precedes an agency decision, in this case the agency response to allegations of improper preferential treatment being afforded Ray L. Hunt." Id. ¶ 14. Lastly, Hanson contends that Exemption 5 "was also applied to draft documents," which are covered by the deliberative process privilege because their disclosure "would reveal deliberations regarding what should, and should not, have been included in the final version of the document." Id. ¶ 15.

CBP has also attached a Vaughn Index to the Hanson declaration.[3] The Index essentially reiterates the same general justifications contained in the declaration on a document-by-document

---

[3] Any reference herein to CBP's Vaughn Index is a reference to the amended version, which was filed as an attachment to CBP's reply brief.

basis and also provides some descriptive details of the documents themselves. The information withheld pursuant to Exemption 5 has been labeled clearly on the redacted documents, all of which were provided by CBP as attachments to its summary judgment motion.

CREW responds that the information furnished by CBP does not come close to justifying the agency's exemption claims. CREW attacks both the Hanson declaration and the Vaughn Index[4] as vague and conclusory, arguing that these are precisely the type of supporting materials that the D.C. Circuit has long found to be inadequate to justify non-disclosure. See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. in Part and in Supp. of Pl.'s Cross-Mot. for Summ. J. in Part ("Pl.'s Mem.") at 6; see also King v. U.S. Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987). According to CREW, then, CBP's reliance on Exemption 5 is unsustainable because the agency has failed to demonstrate that the withheld documents, including those purported to be "drafts," are pre-decisional and deliberative. See Pl.'s Mem. at 8-12. CREW also challenges several other aspects of CBP's Vaughn submission, including its failure to address whether all "purely factual" material has been released and its failure to demonstrate that all reasonably segregable non-exempt material has been released. See id. at 12-14.

In response, CBP asserts that irrespective of its Vaughn submission, "the redacted documents themselves demonstrate FOIA Exemption 5 was properly asserted in this case." Def.'s Reply at 10. By way of example, CBP claims that a review of three separate email strings, comprising sixteen of the twenty-one disputed documents, "shows that a substantial portion of the e-mails were not redacted, and the unredacted portions contained sufficient information to afford Plaintiff a meaningful opportunity to contest, and the district court an adequate foundation to

---

[4] The Court will refer to the Hanson declaration and the Vaughn Index, together, as CBP's Vaughn submission.

review, the soundness of the withholding." Id. at 11. For its part, CREW argues that CBP's exemption claims are no less opaque after examining the redacted documents themselves. See Pl.'s Reply Mem. in Supp. of Pl.'s Cross-Mot. for Summ. J. in Part ("Pl.'s Reply") at 2-3.

As a threshold matter, the Court agrees with CREW that generally CBP's Vaughn submission is vague, conclusory and inadequate to justify the grant of summary judgment in the agency's favor. Put simply, this Court cannot fairly assess the propriety of the Exemption 5 redactions because there is a dearth of "reasonably specific detail" about both the individual redactions themselves and the documents as a whole. See Casey, 656 F.2d at 738. This is true even when CBP's Vaughn submission is considered in conjunction with the unredacted portions of the redacted documents. Nevertheless, after careful in camera review of the unredacted documents the Court can resolve most of the disputed exemption claims. There remain, however, several exemption claims that cannot be resolved at this time because the Court simply possesses insufficient information to find as a matter of law that one of the parties is entitled to summary judgment. In those instances, summary judgment will be denied without prejudice as to both parties and CBP will be required to provide a supplemental Vaughn submission containing a more detailed description of the document.

**A.    April 21, 2008 Email String -- Document Nos. 13, 14, 17, 19, 20, 23**[5]

The majority of the contested documents are email strings, that is to say that the documents are comprised of related, or in many cases identical, emails concerning the same inquiry or topic. The first of these email strings began with an email sent on April 21, 2008 at 12:54 p.m. with the subject line "SECRETARY TASKER - Hunt Fence." Six of the disputed

---

[5] The Document Nos. refer to those used in CBP's Vaughn Index.

documents -- Document Nos. 13, 14, 17, 19, 20, 23 -- are part of this April 21 email string and within those documents there are four separate redactions made pursuant to Exemption 5.[6]

CBP contends that the redactions are justified by Exemption 5 because the emails sought input from subordinate officials in order to develop the Secretary's response to a congressional inquiry related to the allegations in The Texas Observer article. See Def.'s Reply at 11, 16. CBP asserts, then, that these emails detail an "intra-agency discussion" regarding who will gather and select information in response to the allegations, including those related to Hunt. See id. at 16. Hence, according to CBP, these "intra-agency deliberations" concerning its response to the allegations "are subject to redaction under the deliberative process privilege." See id. at 17. CREW takes issue with "'the role, if any, that the [disputed] document[s] play[ed] in the process of agency deliberations.'" See Pl.'s Reply at 3 (quoting Formaldehyde Inst., 889 F.2d at 1123). CREW argues, then, that the redacted material in these emails is not "deliberative" at all because it played no role in the formulation of substantive policy -- it merely catalogs "mundane" details about agency activities. See id. at 4.

Based on an in camera review, the Court agrees with CREW -- the material covered by Redactions 1 through 4 is not "deliberative." Redactions 1 and 2 are both requests for factual information regarding Hunt's property and other related issues, Redaction 3 is a request for assistance in gathering information about Hunt's property, and Redaction 4 discusses what sector

---

[6] For ease of reference, the Court will refer to those redactions in chronological order, as follows: Monday, April 21, 2008, 12:54 p.m. ("Redaction 1"); Monday, April 21, 2008, 1:07 p.m. ("Redaction 2"); Monday, April 21, 2008, 1:27 p.m. ("Redaction 3"); Monday, April 21, 2008, 1:29 p.m. ("Redaction 4"). Document No. 13 contains Redactions 1 and 3, Document No. 14 contains Redaction 1, Document No. 17 contains Redactions 1, 2 and 4, Document No. 19 contains Redactions 1, 2 and 4, Document No. 20 contains Redactions 1, 2 and 4, and Document No. 23 contains Redactions 1 and 2.

of CBP should have responsibility for the foregoing requests.  Although it is true that these redactions are, in the most general sense, part of an intra-agency discussion relating to CBP's response to the allegations in The Texas Observer article, no agency policy is being debated or discussed here -- a task is simply being identified and assigned.  And regarding the agency's official response to the Hunt allegations, there is not even a hint of deliberation to be found here.  Of course, the absence of such deliberation seems reasonable because this email string captures the very genesis of that process, before there is anything of substance to shape.  Indeed, the redacted materials are, quite plainly, not recommendations, drafts, proposals, suggestions or the like, reflecting "the personal opinions of the writer," nor do they reveal the "give-and-take of the consultative process."  See Coastal States, 617 F.2d at 866.  Hence, the release of this information will have no impact whatsoever on the quality of CBP's decisions because it is not "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency."  See id.; see also Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007).  After any appropriate redactions are made pursuant to Exemption 6, then, CBP must release all portions of the April 21 email string currently being withheld under Exemption 5.

**B.     April 30, 2008 Email String -- Document Nos. 10, 11**

The second email string originated with a message sent on April 30, 2008 at 10:08 a.m. with the subject line "Hunt property."  This email string consists of only two documents -- Document Nos. 10 and 11 -- and the same redaction is at issue in both.  Here, the body of an email, sent on May 10, 2008 at 7:48 a.m. with the subject "Fw: Read ahead for Jay Ahern: Monday meeting with S1 on Thompson letter," has been redacted.  CBP's rationale for its exemption claim, and CREW's corresponding challenge, are essentially identical to those outlined

above and do not bear repeating.

After examining the unredacted documents, the Court concludes, once again, that the material that CBP seeks to withhold is not "deliberative" and must be released.  In sum, the redacted material identifies the fact that a meeting is scheduled to take place (a fact also obvious from the subject line), the purpose of that meeting and a request to prepare materials for one of the meeting participants.  It is well-established that the deliberative process privilege generally does not shield purely factual information from disclosure.  See, e.g., Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1113 (D.C. Cir. 2004); Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992).  Here, the redacted material is almost entirely factual and therefore is not properly withheld under Exemption 5.  Moreover, this material does not reflect "the personal opinions of the writer," nor is it "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency."  See Coastal States, 617 F.2d at 866.  Hence, summary judgment will be granted in favor of CREW with respect to Document Nos. 10 and 11 and CBP must release the material that has been redacted pursuant to Exemption 5.

**C.    June 27, 2008 Email String -- Document Nos. 12, 15, 16, 18, 21, 22, 24, 28**

The third, and final, email string originated on June 27, 2008 at 8:00 a.m. with the subject line "What Say We?"[7] and relates to a task regarding River Bend, Tamez and Sabal Palm, three points of interest relating to the border fence.  The June 27 email string is comprised of eight documents -- Document Nos. 12, 15, 16, 18, 21, 22, 24, 28 -- which are actually a mix of both

---

[7] In Document No. 12, this subject line is not redacted, but in all other documents it is redacted pursuant to Exemption 5.  Even if Exemption 5 has not been waived with respect to this subject line, and there is a strong argument that it has been, the Court concludes that the content of the subject line itself is not "deliberative" and must not be redacted on any document.

emails and attachments. Within the email string there are three primary redactions made under the deliberative process privilege, which appear in almost every document.[8]  Document Nos. 22 and 24 also contain attachments that have been redacted heavily on the same rationale. And, finally, Document No. 28 has two Exemption 5-based redactions that are unique to it, one of which was made pursuant to the attorney-client privilege.[9]

Although both parties are entitled to some relief, the Court is unable to resolve all of CBP's exemption claims on these documents at this time due to the lack of detail in the agency's Vaughn submission. Beginning, then, with Redaction 1, the Court concludes that Exemption 5 justifies withholding the first portion of this message -- i.e., all material through the end of the bullet-pointed list. This material is plainly "predecisional" because it predates CBP's final response, to Congress or the public, regarding the Hunt allegations. See Def.'s Reply at 14 (citing Coastal States, 617 F.2d at 866). It is also "deliberative" because it expresses "the personal opinions of the writer" regarding the substance of CBP's response and public disclosure of such material "is likely in the future to stifle honest and frank communication within the agency." See Coastal States, 617 F.2d at 866. Redaction 2 is also proper for the same reasons because it consists, almost entirely, of text that appears to have been copied directly from the first portion of Redaction 1.

---

[8] For ease of reference, the Court will refer to these three redactions in chronological order, as follows: Friday, June 27, 2008, 8:00 a.m. ("Redaction 1"); Thursday, July 3, 2008, 3:09 p.m. ("Redaction 2"); Monday, July 7, 2008, 9:50 a.m. ("Redaction 3"). Document No. 12 contains Redactions 1 and 2, Document No. 15 contains Redactions 1, 2 and 3, Document No. 16 contains Redactions 1, 2 and 3, Document No. 18 contains Redactions 1, 2 and 3, Document No. 21 contains Redactions 1 and 2, Document No. 22 contains Redactions 1, 2 and 3, Document No. 24 contains Redactions 1 and 2, and Document No. 28 contains Redaction 1.

[9] Once again, the parties' arguments both for and against the application of Exemption 5 are essentially the same as those set forth previously and will not be recounted.

However, the final portion of Redaction 1 -- i.e., the final two paragraphs -- is not "deliberative" and must be released. No agency policy is being debated or discussed there; hence, there is no threat to the quality of agency decisions and no potential chilling effect on "honest and frank communication within the agency." See id. This portion of the message is also easily segregable from the exempt portion and therefore must be released. See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."); see also Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1027 (D.C. Cir. 1999) (quoting Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)) ("'It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.'").

Redaction 3 also contains exempt and non-exempt portions. The first portion, which is properly withheld under the deliberative process privilege, covers all material preceding numbered paragraph 2. In addition to containing some of the same exempt material from Redactions 1 and 2, this portion also consists of the author's personal opinions and recommendations regarding the formulation of the agency's substantive response to the Hunt allegations. It is clear, then, that this material is both "predecisional" and "deliberative" and hence its release is likely to adversely affect the quality of agency decisions. The remainder of this email -- i.e., numbered paragraphs 2 and 3 -- is, however, not properly withheld because it is not "deliberative." The agency's response to the Hunt allegations is not being debated or discussed therein, but rather a task is being assigned and an inquiry is being made as to the whereabouts of certain preexisting information. Hence, the release of this material, which is

easily segregable, is not likely to damage the quality of agency decisions by "stifl[ing] honest and frank communication within the agency."  See Coastal States, 617 F.2d at 866.

The Court next turns to the heavily redacted attachments that are part of Document Nos. 22 and 24.  The Vaughn Index describes the attachment that comprises the last two pages of Document No. 22 as "Talking Points related to border fence at Hunt Ranch."  Vaughn Index at 8.  The attachment itself is also labeled as a "draft" and "for official use only."  After reviewing the unredacted version of this attachment, however, the Court is still unable to determine whether Exemption 5 is properly invoked because CBP's Vaughn submission lacks sufficient detail about the document and its role in the decisionmaking process.  Although CBP puts much stock in its characterization of this document as a "draft" containing "talking points," that, without more context, such as the attachment's author, recipient, purpose or use, is insufficient to assess the exemption claim.  See, e.g., Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252, 265-66 (D.D.C. 2004) (denying cross-motions for summary judgment with respect to "draft talking points" because the agency failed to identify specifics about the document's "place in a particular decisionmaking context . . . [or] whether, as a draft, these talking points were actually used in a communication with the public").  There also appears to be a substantial amount of factual material contained in this attachment and, as discussed above, such information is generally subject to disclosure.  See Petroleum Info., 976 F.2d at 1434 ("Under the deliberative process privilege, factual information generally must be disclosed.").  At the very least, then, CBP must supplement its Vaughn submission before the Court can resolve this exemption claim.  And if CBP chooses to maintain its exemption claim, it should also be mindful of its duty to segregate all non-exempt material -- an issue not adequately addressed by its current Vaughn submission.

For essentially the same reasons, the Court also cannot resolve CBP's exemption claims with respect to Document No. 24's five separate attachments -- Hunt Development River Bend Talking Point_4-28-08, Tamez Property Brief 5-20-08, Fence Segment O, Tamez Property 4-23-08, and Sabal Palm Audubon Society Refuge Summary.[10] Despite being circulated to CBP staff members for review and comment, the "draft" status of these documents is insufficient, standing alone, to justify non-disclosure. Defenders of Wildlife v. U.S. Dep't of Agric., 311 F. Supp. 2d 44, 58 (D.D.C. 2004) ("[D]efendants' designation of a document as a 'draft' does not automatically trigger proper withholding under Exemption 5."). Moreover, even after in camera review, the role that these documents played in the decisionmaking process is a mystery given CBP's vague and conclusory Vaughn submission. Here again, there is also cause for concern with regard to CBP's duty to release "[a]ny reasonably segregable portion of these documents," see 5 U.S.C. § 552(b), especially purely factual material, see Petroleum Info., 976 F.2d at 1434. Thus, summary judgment will be denied without prejudice as to both parties with respect to Document No. 24's five separate attachments and CBP must supplement its Vaughn submission if it wishes to maintain its exemption claims.

Finally, there are two redactions that are unique to Document No. 28. The first, which covers the text directly after "Per OCC," is made under a claim of attorney-client privilege. After reviewing the unredacted document, the Court has determined that this text is not a privileged communication and therefore must be released. Although CBP clarifies that "OCC" is an

---

[10] Two additional attachments -- AAR_4-29-08 Office of the Commissioner Briefing (River Bend Resort) and AAR_5-27-08 Audubon Sabal Palm Meeting (RGV Sector) -- were redacted under both Exemption 5 and Exemption 7(E). Because the material withheld pursuant to Exemption 7(E) overlaps completely with that withheld pursuant to Exemption 5, and CREW has not challenged any 7(E) exemption claims, the Court need not reach the question whether Exemption 5 was properly invoked in those instances, and those redactions are permitted.

abbreviation for Office of Chief Counsel, see Def.'s Reply at 21, the redacted material does not contain confidential client information, nor does it solicit legal advice -- it merely acknowledges that legal advice will be given in the future.  Because the attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice," Mead Data, 566 F.2d at 252, this material is not protected by the privilege and it must be released.

Also on the first page of Document No. 28, CBP has redacted the body of an email sent on Thursday, July 3, 2008 at 9:38 a.m.  Apart from the subject line, which must be released, see n.7 supra, Exemption 5 has been properly invoked to withhold the body of the email itself.  The redacted text reflects the writer's personal opinions and recommendations regarding the formulation of the agency's substantive response to the Hunt allegations and, consequently, there is no question that this material is both "predecisional" and "deliberative."  Because the release of such material would offend the core policies underlying the deliberative process privilege, CBP's withholding is justified and summary judgment will be entered in its favor on this item.

**D.      Miscellaneous -- Document Nos. 1, 9, 25, 27, 31**

Of the remaining documents, two of them -- Document Nos. 25 and 31 -- have been properly withheld by CBP.  With respect to Document No. 25, "[t]he agency asserted Exemption 5 in conjunction with Exemption 7(E)."  Def.'s Reply at 5 n.6.  In fact, the entirety of CBP's Exemption 5 claim is coextensive with its Exemption 7(E) claim, which in this instance is based upon law enforcement considerations related to border security.  See Vaughn Index at 9 ("[I]ncludes detailed synopses of fence sectors, including vulnerabilities and vanishing points.").  Consequently, the Court need not reach the question whether Exemption 5 has been properly

asserted here because Exemption 7(E), which has gone unchallenged by CREW, covers all of the redacted material at issue.  With respect to Document No. 31, the Court's in camera inspection establishes that Exemption 5 has been properly invoked because the redacted material contains the drafter's personal assessment of possible policy options.  Such material clearly reflects "the personal opinions of the writer" and reveals the "give-and-take of the consultative process."  See Coastal States, 617 F.2d at 866.  Thus, releasing such material would contravene the purpose of the deliberative process privilege by "stifl[ing] honest and frank communication within the agency."  See id.  Accordingly, then, this material has been properly withheld by CBP pursuant to Exemption 5.

But for the final three documents -- Document Nos. 1, 9 and 27 -- the Court is unable to determine, at this time, whether these documents have been properly withheld due to the lack of detail in CBP's Vaughn submission.  After examining unredacted copies of these documents in camera, critical information remains missing -- including, for example, the documents' respective authors, recipients, purposes or uses -- that is not evident from the face of the documents themselves.  Without such details, the Court cannot assess what role these documents played in the decisionmaking process and, ultimately, whether Exemption 5 applies.  Moreover, CBP's characterization of these documents as "drafts" (Document No. 27) or "talking points" (Document Nos. 1 and 9) is, without more, insufficient to establish that they are both "predecisional" and "deliberative."[11]  See, e.g., Judicial Watch, 297 F. Supp. 2d at 265-66.  The Court also notes that

---

[11] As to Document Nos. 1 and 9, CBP asserts that "[t]here is no factual basis in the record that the talking points were adopted, formally or informally, as CBP's position, or that the talking points constituted anything other than 'briefing material.'"  Def.'s Reply at 17-18 n.14.  The absence of such information from the record -- information that CBP itself has the burden to furnish -- is, quite clearly, not a sufficient basis upon which to grant summary judgment in the agency's favor.

there appears to be a significant amount of purely factual material contained in these documents and, as discussed above, such information is generally subject to disclosure.  See Petroleum Info., 976 F.2d at 1434.  Similarly, if CBP chooses to continue its current exemption claims with respect to these three documents -- which have all been redacted in full -- and supplement its Vaughn submission, the agency must provide more detailed information to demonstrate that it has met FOIA's "segregability" requirement.  See 5 U.S.C. § 552(b); see also Trans-Pacific Policing, 177 F.3d at 1027.  Accordingly, both parties' motions will be denied without prejudice as to the exemption claims relating to Document Nos. 1, 9 and 27.

## CONCLUSION

For the reasons stated above, both parties' motions for partial summary judgment will be granted in part and denied in part.  CREW's motion will be granted in its entirety with respect to the Exemption 5 claims in Document Nos. 10, 11, 13, 14, 17, 19, 20, and 23, and it will be granted in part and denied in part with respect to the Exemption 5 claims in Document Nos. 12, 15, 16, 18, 21, 22, 24, and 28.  CBP's motion will be granted in its entirety with respect to Document Nos. 25 and 31, and it will be granted in part and denied in part with respect to the Exemption 5 claims in Document Nos. 12, 15, 16, 18, 21, 22, 24, and 28.  Both parties' motions will be denied without prejudice as to the Exemption 5 claims in Document Nos. 1, 9 and 27 and as to the relevant attachments within Document Nos. 22 and 24.  Judgment will also be entered in favor of CBP on all withholdings made pursuant to Exemptions 6 and 7(E).  A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated:   September 1, 2009